IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| JACKIE WALDEN, | ) | |
|---|---|---|
| Petitioner, | ) | Civil Action No. 11-111 Erie |
| | ) | |
| v. | ) | District Sean J. McLaughlin |
| | ) | Magistrate Judge Susan Paradise Baxter |
| ARCHIE B. LONGLEY, | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I. RECOMMENDATION**

It is respectfully recommended that the petition for a writ of habeas corpus filed by federal prisoner Jackie Walden be denied and that this case be closed.

**II. REPORT**

Pending before the Court is the petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 by Jackie Walden. He challenges a disciplinary action taken when he was incarcerated at the Federal Correctional Institution ("FCI"), Fort Dix, New Jersey, in connection with an incident report issued on January 28, 2010. He was charged with Possession of a Hazardous Tool (a cell phone) in violation of Code 108.[1] A code level 100 misconduct is the most serious form of misconduct.

Walden challenges the finding that he violated Code 108. He claims that the evidence relied upon by the Discipline Hearing Officer ("DHO") did not support the charge, in violation of his due process rights. He also claims that his rights under the Equal Protection Clause were violated, and challenges the Bureau of Prisons' (the "BOP's") classification of cell phones as "hazardous tools." He

---

[1] Walden also was charged with Possession of Anything Not Authorized (primarily tobacco and related products), in violation of Code 305. He does not challenge the finding that he committed that violation.

1

contends that the BOP violated the Administrative Procedures Act, 5 U.S.C. § 551, *et seq.* ("APA") when it instituted the rule that classified them as such.

### A. Relevant Background

The Bureau of Prisons (the "BOP") designated Walden to FCI Fort Dix on or around April 25, 2002. [Pet's Ex. C, ECF No. 8-1 at 7]. He shared a cell with one inmate. [ECF No. 9 at 5 n.3]. During the relevant time period, Code 108 read that the following was a prohibited act:

> Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade)

28 C.F.R. § 541.13, Table 3.[2]

On October 4, 2006, the Warden at FCI Fort Dix advised the inmate population that:

> Effective immediately, inmates found in possession of electronic communication devices or related equipment such as a cell phone, charger, video equipment, etc., may be charged with a violation of Code 108, Possession, Manufacture, or Introduction of a Hazardous Tool, or Code 199 most like Code 108. Also, Program Statement 5270.07, <u>Inmate Discipline and Special Housing Units</u>, states it is an inmate's responsibility to keep his or her area free of contraband. Inmates will be subject to available sanctions if found to have committed the prohibited act.

[Resp's Ex. 7, ECF No. 13-1 at 33]. In addition to this memo, inmates were advised through town hall meetings and various other memoranda that if they were found to be in possession of a cell phone, they would be charged with a Code 108 violation. [Declaration of Anthony C. Boyce, ¶ 14, ECF No. 13-1 at 6. <u>See</u> <u>also</u> Resp's Ex. 6, ECF No. 13-1 at 30 (indicating that "on December 28, 2009, … it was again explained that 'a cell phone is considered a threat to the security and orderly running of the institution, not only of the inmate involved, but that of the entire institution.'"].

---

[2] The BOP recently revised Code 108 to provide additional examples of "hazardous tools," including a "portable telephone, pager, or other electronic devise." 28 C.F.R. § 541.3 (effective June 20, 2011).

On January 28, 2010, Incident Report No. 1972525 was issued to Walden for violating Code 108, Possession of a Hazardous Tool (a cell phone) and Code 305, Possession of Anything Not Authorized (primarily tobacco and related products). The reporting employee provided the following description of the incident:

> On 1-28-2010, at approximately 1:30 PM, while conducting a search of Q0321, which is assigned to inmate Walden, Jackie, Register Number 30984-037, I discovered 8 packets of Bugler tobacco, 36 Quaker Grit packets suspected to be filled with tobacco, 1 stinger, 1 cell phone charger, 1 outlet socket and 1 white virgin mobile cell phone. The contraband was located in the window panel (the panel was secured with security screws). All contraband was turned over to the Operations Lt. and a chain of custody form completed.

[Resp's Ex. 3, ECF No. 13-1 at 20].

Walden received notice of the charges the next day. At his subsequent Unit Disciplinary Committee ("UDC"), which was convened a few days later, Walden stated "that he has been set-up and framed." [Id.] The UDC referred the disciplinary action to the DHO.

Walden's DHO hearing was held on March 3, 2010. The DHO summarized Walden's statement at the hearing as follows:

> "I did not know what was in the window. They said they found it in the window. I did not have access to the window. I do not have any access to the window security screws or anything." The DHO asked, "Do you have a problem with any other inmates?" He replied, "I don't run with a gang. There are dudes that don't like you for any reason." The DHO asked, "How long have you been in that room?" He replied, "Three or four years."

[Resp's Ex. 6, ECF No. 13-1 at 28].

The DHO determined that Walden committed the prohibited acts. In reaching his decision, the DHO considered Walden's statements, the incident report and investigation, and pictures of the contraband, including the cell phone and charger. [Id. at 29]. The DHO summarized his findings as follows:

3

> The decision is based on the greater weight of the evidence, provided before me which is documented in the written report provided by the reporting employee….
>
> The DHO took into consideration your statement, specifically, "I did not have access to the window … " but, you also state you have been in the room for three or four years and that shows you have had plenty of access to the area where the contraband was found. I found you have every reason to make these assertions in an effort to have the charge against you expunged. Essentially, you have everything to gain and nothing to lose in that effort however, I found the employee involved in this incident to be more credible than yourself as he has no vested interest in you, outcome of the report, and does have a legal obligation to be truthful. Additionally, you are responsible to insure your assigned area remains contraband free therefore you are responsible for the contents in your assigned area be that window or floors.
>
> Your statement that you did not have access to the window or any tools to open the panel is looked on with skepticism since you have occupied that room for over three years, in the past in correctional settings, inmates have used any number of ways to secrete contraband in their cells.

[Id. at 29-30].

Walden administratively appealed the DHO's decision. In his appeal to the BOP's Regional Director, he argued that "although [the prohibited] items were found in room 321 which is assigned to me and my cellmate, these items weren't found on my person, nor were the[y] found in my assigned locker, nor anything else that belong[s] to me or has my reg. number or name on it." [Pet's Ex. C, ECF No. 8-1 at 6]. He also asserted that he did not possess the tools necessary to hide items in the secured window panel. Additionally, he complained that he had not been properly notified that a cell phone is a hazardous tool, such that he would be found violating Code 108 if he was found to have possessed one. [Id. at 6-7].

The Regional Director denied Walden's appeal, stating:

> The items were found [during the January 28, 2010, search of your cell] secured in the window panel…. In your defense, you denied knowledge of the contraband and claimed you had no access to the window panel. The DHO noted you had been assigned to the cell for about four years and were a unit orderly. The cell phone, charger and other items of contraband were found in your assigned cell, in an area in which you had the time and opportunity to successfully access. You are responsible for all contraband found in your

4

> assigned areas and personal property. There was no evidence presented that the items found belonged to someone else or that you were set up. We find the DHO reasonably determined you committed the offenses. Staff were not required to conduct fingerprint analysis to show you possessed these items. There is also no requirement for staff to match the phone numbers in the cell phone.
>
> …. Records show you were designated to FCI Fort Dix on April 25, 2002. On October 4, 2006, the Warden at FCI Fort Dix advised the inmate population that an inmate found in possession of electronic communication devices or related equipment such as cell phones, chargers, video equipment, etc., may be charged with a violation of Code 108. We find you were appropriately charged with Code 108 and sanctioned accordingly. Your appeal is denied.

[Id. at 8-9].

Walden appealed to the BOP's Administrator of National Appeals, who denied his arguments and found that "the DHO's determination [was] reasonable." He also stated that he agreed with the Regional Director that Walden had been given proper notification that an inmate found in possession of a cell phone or charger could be charged with a Code 108 violation. [Pet's Ex. D, ECF No. 8-1 at 12].

After the Administrator of National Inmate Appeals issued his response, Walden commenced habeas proceedings in this Court. Respondent has filed an Answer [ECF No. 13], to which Walden has filed a Reply [ECF No. 14].

### B.  Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). "Two federal statutes, 28 U.S.C. §§ 2241 & 2255, confer federal jurisdiction over habeas petitions filed by federal inmates." Id.[3] "The 'core' habeas corpus action is a prisoner challenging the authority of the entity detaining him to do so, usually on the

---
[3] A federal prisoner cannot challenge the conditions of his confinement in that habeas action. He must do so in an action filed pursuant to Bivens v. Six Unknown Names Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

ground that his predicate sentence or conviction is improper or invalid." McGee v. Martinez, 627 F.3d 933, 935 (3d Cir. 2010) (citing Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002)). That type of habeas action is brought under 28 U.S.C. § 2255, which permits a federal prisoner to challenge his sentence "upon the ground that [it] was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255. In contrast, § 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the *execution of his sentence*." McGee, 627 F.3d at 935 (emphasis added) (quoting Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001) and citing Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005)).

The U.S. Court of Appeals for the Third Circuit has recognized that "the precise meaning of 'execution of the sentence' is hazy." Cardona, 681 F.3d at 536 (quoting Woodall, 432 F.3d at 242). In McGee, the Third Circuit Court instructed that "the question to be asked is whether granting the petition would 'necessarily imply' a change to the fact, duration, or execution of the petitioner's sentence." 627 F.3d at 936. It has held that "[a] challenge, such as this one, to a disciplinary action that resulted in the loss of good-time credits, is properly brought pursuant to § 2241, as the action could affect the duration of the petitioner's sentence." Queen v. Miner, 530 F.3d 253, 254 (3d Cir. 2008) (*per curiam*) (citations omitted). See generally Brian R. Means, FEDERAL HABEAS MANUAL § 1:29 (June 2012) ("All courts agree that § 2241 is an appropriate vehicle to challenge government action that inevitably affects the duration of the petitioner's custody, such as challenges to administrative orders revoking good-time credits, computation of a prisoner's sentence by prison officials, a right to release on parole, or other equivalent sentence-shortening devices."). But see Cardona, 681 F.3d at 537 n.8 (observing in *dicta* that "the Supreme Court's recent opinion in Pepper v. United States, — U.S. —, 131 S.Ct. 1229, 179 L.Ed.2d

196 (2011) calls into question whether an inmate can even bring a habeas claim for an actual loss of good time credits, holding that '[a]n award of good time credit by the [BOP] does not affect the length of a court-imposed sentence; rather, it is an administrative reward 'to provide an incentive for prisoners to compl[y] with institutional disciplinary regulations.' Id. at 1248 n. 14 (internal quotation marks omitted) (quoting Barber v. Thomas, 560 U.S. —, 130 S.Ct. 2499, 2505, 177 L.Ed.2d 1 (2010))".)

**C.    Discussion**

**1.    The DHO's Determination Was Supported By the Requisite Degree of Evidence**

Walden contends that his due process rights were violated because the DHO's decision was not supported by the weight of the evidence. In conducting habeas review, a federal court must decide whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3). Where, as is the case here, a disciplinary sanction impacts the duration of a federal inmate's sentence, a protected liberty interest in the inmate's release from confinement is affected, and minimal procedural guarantees are recognized. Superintendent v. Hill, 472 U.S. 445 (1985).

In Superintendent v. Hill, the U.S. Supreme Court held that requiring "a modicum of evidence to support a decision to revoke good time credits will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." 472 U.S. at 455. The Supreme Court then held "that the requirements of due process are satisfied if *some evidence* supports the decision by the disciplinary board to revoke good time credits." Id. (emphasis added). Once the reviewing court determines that there is at least "some evidence" to support the findings of the DHO, the court must reject the evidentiary challenge by the petitioner and uphold the finding of the DHO. Id. "Ascertaining whether [the] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence." Id. at 455-56.

7

In this case, there is the requisite evidence to support the DHO's determination that Walden committed the violations with which he was charged. He does not dispute that the cell phone was found in a window panel in his cell. He argues that he did not know that it was there and that he did not have the tools necessary to access it. Importantly, however, the DHO did not credit his assertions in this regard and this Court is bound by the DHO's credibility determinations. For this reason alone, Walden's due process claim fails.

In addition, BOP policy and regulations in effect during the relevant time instructed that it is an inmate's responsibility to keep his areas free of contraband. 28 C.F.R. § 541.12 (Table, at No. 4); Program Statement 5270.07. Thus, pursuant to BOP rules and regulations, Walden's contention that the cell phone did not belong to him makes no difference, because he was responsible for any items found in his cell.

In actuality, Walden is contesting the application of the "constructive possession" doctrine to his disciplinary proceeding. Federal courts have held that the BOP policy that deems an inmate responsible for any contraband found within his cell does not offend due process absent exculpatory evidence that makes the finding of the inmate's "possession" so unreliable as to not satisfy the "some evidence" standard set forth in Superintendent v. Hill. See, e.g., Hamilton v. O'Leary, 976 F.2d 341 (7th Cir. 1992); Flannagan v. Tamez, 368 F.App'x 586, 587 (5th Cir. 2010) (per curiam); Okocci v. Klein, 270 F.Supp.2d 603, 613 (E.D.Pa. 2003); White v. Kane, 860 F.Supp. 1075, 1079 (E.D.Pa. 1994); Thompson v. Hawk, 978 F.Supp. 1421, 1423-24 (D.Kan. 1997). The application of the constructive possession doctrine has been upheld in the context of prison disciplinary proceedings that concerned the discovery of contraband in a shared room, for which no resident acknowledged responsibility. See Flannagan, 368 F.App'x at 587 (DHO's application of the constructive possession rule did not violate due process where "a cell phone and charger [were] located in a concealed hole in the wall next to a bed assigned to [the

petitioner] and another inmate[,]" even though the "contraband was found in a common area that adjoined the sleeping quarters of five inmates, including [the petitioner]."); Tweedy v. Vannatta, 101 F.App'x 158 (7th Cir. 2004) (marijuana found in cup in common area in two person cell); Hamilton, 976 F.2d at 346 (six weapons were found in air vent of cell shared by four inmates); Okocci, 270 F.Supp.2d at 613 (weapon found in a two-person cell); White, 860 F.Supp. at 1079 (applicable where contraband was found in cell assigned to one inmate, but which was accessible to other inmates in the prison).

Some courts have adopted a probability analysis, based on the number of prisoners having access to the area in which contraband is discovered, to determine whether the due process requirement of "some evidence" as articulated in Superintendent v. Hill is satisfied. For example, in Hamilton v. O'Leary, 976 F.2d 341 (7th Cir. 1992), the petitioner argued that the constructive possession rule did not provide a sufficient evidentiary basis for the disciplinary committee's finding of culpability, where three other inmates also had access to the area in which the contraband had been discovered. The U.S. Court of Appeals for the Seventh Circuit rejected the petitioner's argument and ruled that "given the 25% chance of guilt, 'the record is not so devoid of evidence that the findings of the disciplinary board without support or otherwise arbitrary,'" and that such a percentage constituted "some evidence " to support the disciplinary committee's decision. Id. at 346 (citing Superintendent v. Hill, 472 U.S. at 457). See also Harms v. Godinez, 829 F.Supp. 259, 264 (N.D.Ill. 1993) (holding that "[i]f a one-in-four chance of actual guilt [as in Hamilton] does not violate the due process clause, then a one-in-six chance of guilt does not either."); Mason v. Sargent, 898 F.2d 679, 680 (8th Cir. 1990) (one-in-two chance, or 50% probability that each inmate is guilty amounts to "some evidence"); Superintendent v. Hill, 472 U.S. at 456-57 (one-in-three chance, where three inmates were seen fleeing the scene of an assault, constituted "some evidence" for purposes of constructive possession).

Here, Walden shared his cell with only one other individual. He claims that his cell door had no lock and, therefore, was accessible to other inmates in his unit, but he did not present evidence to the DHO indicating that so many inmates had unrestricted access to his cell such that he should not have been held to the constructive possession rule.

In conclusion, Walden has not established that he was denied due process because there was insufficient evidence to support the DHO's findings. Accordingly, this claim should be denied for lack of merit.[4]

## 2. The BOP's Classification of Cell Phones As Hazardous Tools

Walden also challenges the BOP's decision to classify cell phones as "hazardous tools," thereby making the possession of them fall within the ambit of the version of Code 108 in effect at the time in question here. Other federal prisoners have made the same challenge to the BOP's decision, and their requests for habeas relief have been consistently rejected by the Third Circuit Court because it is well-settled that "[a]n agency's interpretation of its own regulations is 'controlling … unless it is plainly erroneous or inconsistent with the regulation.'" Chong v. Dist. Dir. INS, 264 F.3d 378, 389 (3d Cir. 2001) (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945)). For example, in Hicks v. Yost, 377 F.App'x 223, 224-25 (3d Cir. 2010) (per curiam), the court held that "the absence of the term 'cell phone' in the text of [the prior version of] Code 108 did not prevent the BOP from interpreting that provision to include this item." The court further held that the BOP's interpretation of

---

[4] In his Reply [ECF No. 14], Walden argued for the first time before this Court that his due process rights were violated because the DHO was not impartial and did not permit him to present documentary evidence. He did not raise these claims in his petition [ECF No. 8] or accompanying brief in support [ECF No. 9], and, therefore, this Court will not consider them. He was required to raise them in his petition and accompany brief. The standard form, which he submitted, directed him to "State CONCISELY every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground." [ECF No. 8 at 5]. See also Local Rule LCvR 2241(B)(2)(b) (in the § 2241 petition, "the petitioner is to state all grounds for relief, provide specific facts supporting each argument, and identify the relief requested.").

Code 108 is not plainly erroneous or inconsistent with that provision and therefore cannot be disturbed by a federal court sitting in habeas. Id. (citing Chong, 264 F.3d at 389). See also Ryan v. Scism, 474 F.App'x 49, 52 (3d Cir. 2012) (per curiam) (petitioner "has not shown that [the] BOP's interpretation that the possession of [a] cellular phone is a prohibited act under PAC 108 is plainly erroneous or inconsistent with the regulation."); Materon v. Ebbert, 446 F.App'x 405, 407 (3d Cir. 2011) (per curiam) ("The DHO determined, in accordance with a memorandum issued by the warden, that cell phones were 'hazardous tools' because they could be used to facilitate escape or to engage in other illegal activities, and thus represent 'a threat to the security and orderly running of the institution.' … This interpretation is consistent with the language of Code 108, and we thus discern no error in the DHO's analysis."); McGill v. Martinez, 348 F.App'x 718, 721 (3d Cir. 2009) (same); Robinson v. Warden, 250 F.App'x 462, 464 (3d Cir. 2007) (same).

Walden also argues that the BOP's rule to include cell phones as a "hazardous tool" within the prior version of Code 108 is invalid because it was not promulgated in accordance with the APA's notice-and-comment procedures, set forth at 5 U.S.C. § 553. This claim also has no merit.

The APA provides that an agency may not adopt a "rule" (commonly referred to as a "legislative rule" or "substantive rule") without providing prior notice and comment through publication in the Federal Register. 5 U.S.C. § 553(b), (c). It defines a "rule" as "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency[.]" Id. § 551(4). Rules that are issued in violation of the APA are invalid.

On the other hand, "interpretive" rules seek only to interpret language already in properly issued regulations. If the agency is not adding or amending language to the regulation, the rules are interpretive. Interpretive, or "procedural," rules do not themselves shift the rights or interests of the

11

parties, although they may change the way in which parties present themselves to the agency. Interpretive or procedural rules and statements of policy are exempted from the notice-and-comment requirement. Chao v. Rothermel, 327 F.3d 223, 227 (3d Cir. 2003) (citations omitted); Dia Navigation Company v. Pomeroy, 34 F.3d 1255, 1264 (3d Cir. 1994).

Under the regulation in effect at the time at issue here, Code 108 included all tools likely to be used in an escape or escape attempt, and a cell phone falls within that definition. Therefore, the inclusion of cell phones as "hazardous tools" under Code 108 was an interpretative rule and not subject to the notice-and-comment requirement of the APA. Ryan, 474 F.App'x at 52 ("The APA applies only to legislative rules, rules that impose new duties upon the regulated party…. PAC 108, however, is an interpretive rule, and therefore the APA does not apply."); Hall v. Zickefoose, 448 F.App'x 184, 186 (3d Cir. 2011) (per curiam) ("The APA does not apply to PAC 108 because PAC 108 is an interpretive rule.").

Based upon all of the foregoing, Walden's challenges to the BOP's decision to classify cell phones as hazardous tools have no merit and must be denied.

3. **The Application of Code 108 To Inmates Who Are Found In Possession Of Cell Phones Does Not Violate the Equal Protection Clause**

Walden contends that the BOP treated him differently than other similarly situated inmates and that this is a violation of the Equal Protection Clause. He contends that prison officials choose between inmates found in possession of cellular telephones and randomly charge those inmates with different code violations ranging from Code 305 (Possession of Anything Not Authorized) to Code 108 (Possession of a Hazardous Tool) to Code 199 (Conduct Which Disrupts the Security or Orderly Running of the Institution).

The Equal Protection Clause requires that all people similarly situated be treated alike. See, e.g., City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). A petitioner who alleges an equal protection violation has the burden of proving the existence of purposeful discrimination that had a discriminatory effect on him. See McCleskey v. Kemp, 481 U.S. 279, 292 (1987); Whitus v. Georgia, 385 U.S. 545, 550 (1967). "Thus, to prevail under the Equal Protection Clause, [Walden] must prove that the decisionmakers in his case acted with discriminatory purpose." Id. at 292.

Walden cites to cases in which inmates have received less severe punishment for the same violation committed by him. However, he has failed to put forth sufficient evidence that his disciplinary sanction was the result of purposeful discrimination. Accordingly, his equal protection claim fails. See Ryan, 474 F.App'x at 52-53 ("Although [the petitioner] alleged that inmates Hudson and Neagle received a lesser sanction than he for the same prohibited act, he failed to offer evidence that Hudson and Neagle were similarly situated to him. Moreover, [the petitioner] was sanctioned in conformity with the regulation. Accordingly, his equal protection claim fails."); Hall, 448 F.App'x at 187 (same); Millard v. Hufford, 415 F.App'x 348, 350 (3d Cir. 2011) (per curiam) ("Millard cited various cases in which inmates received less severe punishment for the same violation committed by Millard (possession of a weapon), arguing that because he received harsher punishment than other inmates for the same offense, the punishment must have been the result of discrimination .... Millard's argument falls well short of establishing the purposeful discrimination necessary to make out an equal protection claim.") (citing McCleskey, 481 U.S. at 292 (explaining that purposeful discrimination means "that the decisionmakers in [the claimant's] case acted with discriminatory purpose.")).

Based upon all of the foregoing, Walden's equal protection claim lacks merit and should be denied.

13

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied and that this case be closed.[5]

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the petitioner must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: September 13, 2012

cc: The Honorable Sean J. McLaughlin
United States District Judge

---

[5] Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253(as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).